UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ELMER D. CHARLES, JR.,
*also known as Anastaisa Renee,*

        Plaintiff,

v.                                                       CAUSE NO.: 3:18-CV-592-RLM-MGG

RON NEAL, et al.,

        Defendants.

OPINION AND ORDER

Anastaisa Renee, a prisoner without a lawyer, filed a motion for a preliminary injunction. She alleges that correctional staff engaged in egregious sexual misconduct during strip searches on three separate occasions in January and February 2019, and she seeks a transfer to a women's correctional facility. Ms. Renee, an inmate at the Indiana State Prison who identifies as female, is proceeding on several claims, alleging that prison officials failed to protect her from sexual misconduct, and also seeks gender reassignment surgery.

The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc., 149 F.3d 722, 726 (7th Cir.1998). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is

granted; and (4) the injunction will not harm the public interest." <u>Joelner v. Village of Washington Park, Illinois</u>, 378 F.3d 613, 619 (7th Cir. 2004).

In the motion now before the court (ECF 46), Ms. Renee alleges that, on January 17, 2019, Lieutenant Wilson and another officer came to her cell to conduct a strip search after an inmate overdosed nearby. Ms. Renee told the officers that she was entitled to have a female officer conduct the search, and Lieutenant Wilson said, "I want to see those titties." Ms. Renee asked to see a captain, but Lieutenant Wilson refused, applied pepper spray, and threatened to use physical force if she didn't strip. After Ms. Renee removed her clothes, the offices became sexually aroused, fondled themselves, and forced Ms. Renee to fondle her breasts and anus. The officers called three more officers to the cell, and they watched Ms. Renee as inmates passed by. She reported the incident to internal affairs. She was told that the officers had acted inappropriately, but the officers weren't punished. She also contacted Warden Ron Neal, who told her that she was in a men's prison and that she needed to deal with it.

According to Ms. Renee, Lieutenant Wilson and another officer arrived at her cell nine days later, and a similar incident ensued. She reported the incident to internal affairs, who told her that the surveillance footage didn't capture the incident because of the camera's position. She also reported the incident to Warden Neal, who told her that he was tired of Ms. Renee "crying and being a tattle tale." On February 11, five officers, including Lieutenant Wilson, arrived at her cell and told her to strip, stating that they were following orders from the warden. She was also ordered to dance as thirty male staff members looked on

2

and jeered. When Ms. Renee complained to the warden, he told her that she was in a men's facility, "to suck it up and deal with it," and that, if she didn't want to be treated this way, she shouldn't have filed a lawsuit. She says she has been subjected to sexual misconduct during strip searches on 26 occasions since filing this lawsuit on August 6, 2018.

Warden Neal filed a response, including grievance records and declarations from staff. ECF 48. On January 23, 2019, Ms. Renee filed a grievance, stating that Lieutenant Wilson and another officer arrived at her cell to conduct a strip search and threatened to use pepper spray and other forms of physical force if she didn't comply. ECF 48-2 at 4. When she complied, Lieutenant Wilson and the other officer made lewd comments about Ms. Renee's breasts and became sexually aroused as other inmates walked by. On February 28, 2019, a grievance officer replied that the video recording did not show other inmates walking by and that the officers acted professionally and in accordance with policy. Id. at 3. According to the grievance officer, departmental policy didn't require female officers to conduct strip searches on Ms. Renee, and Lieutenant Wilson denied that he or other staff made any lewd comments.

Nicole Rodriguez of the Office of Investigations and Intelligence attested that she also investigated Ms. Renee's complaint about the January 17 strip search. ECF 48-3. She interviewed Ms. Renee and the staff members allegedly involved but didn't interview inmates because she didn't find that any were present. Ms. Rodriguez hasn't yet finalized the investigative report but has concluded that the complaint was unfounded. She was further unable to find

3

any complaints regarding staff misconduct on January 26 or February 11 in Ms. Renee's file.

Lieutenant Wilson attests that he worked in Ms. Renee's cellhouse in January and February 2019 and has searched her cell. ECF 48-4. He denied using pepper spray on Ms. Renee, ordering Ms. Renee to engage in sexual conduct, ordering any other officers to engage in sexual misconduct with Ms. Renee, calling other officers or inmates to see Ms. Renee unclothed, or making the lewd statements attributed to him by Ms. Renee in the instant motion.

Warden Neal attests that neither he nor his assistant have been able to find any correspondence to or from Ms. Renee. ECF 48-1 at 1-4. He has been unable to find any use of force reports involving Ms. Renee since January 17, 2019. He says he reviewed the shift reports from January 17, January 26, and February 11, and found no corroboration for Ms. Renee's allegations.

This isn't the first time Ms. Renee has filed a motion for a preliminary injunction regarding the January 17 strip search. On January 29, she filed a motion for a preliminary injunction, alleging that Lieutenant Wilson ordered her to undress for a strip search and used pepper spray on her and threated further physical force when she didn't comply. ECF 39. That earlier filing didn't include any specific allegations of sexual misconduct or any other suggestion of an improper motive, and the court found that Ms. Renee wasn't reasonably likely to succeed on the merits because Lieutenant Wilson appeared to have a legitimate basis for the strip search. ECF 42. The court also observed that the strip search appeared to be the first since she quit her job in January 2018 and found that

4

Ms. Renee was unlikely to suffer irreparable harm because the strip search was an isolated incident.

To start, the court considers whether Ms. Renee has demonstrated a reasonable likelihood of success on the merits. The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[I]n order to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that [she] was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010). In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." Brown v. Budz, 398 F.3d 904, 911 (7th Cir. 2005). In such cases, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996).

The Warden has submitted substantial evidence that prison officials didn't act with deliberate indifference to Ms. Renee's complaints of sexual misconduct. According to the record, a grievance officer and an investigation officer each investigated Ms. Renee's grievance on the January 17 strip search. They reviewed the video recording, interviewed the parties involved, and concluded that Ms. Renee's grievance was unfounded. The facility's records indicate that Ms. Renee didn't submit a grievance or otherwise report any January 29 and February 11

strip searches. While Ms. Renee might have tried to contact the Warden about the strip searches, he didn't receive or respond to these communications.

Ms. Renee disputes the Warden's account of her communications with the Warden and the investigations unit, but, unlike the Warden, she provides no documentation to support her allegations. Further, the evolving nature of Ms. Renee's description of the January 17 strip search raises significant concerns with her credibility. For instance, in the grievance, Ms. Renee alleged that Lieutenant Wilson and another officer threatened her with pepper spray and made lewd comments as they conducted the strip search. In the first motion for a preliminary injunction, Ms. Renee altered the narrative, alleging that Lieutenant Wilson used pepper spray on her in an effort to obtain compliance with his strip search orders, but she omitted any specific allegations of sexual misconduct. After this motion was denied, she changed the narrative once again in the motion now before the court to include a graphic description of sexual misconduct. She also added that she had been subjected to similar sexual misconduct on 26 occasions since August 2018.

In evaluating the likelihood of success, then, the court finds the prison's investigations and documentary file, and the statements of three witnesses or investigators on one side, and the statement and prior inconsistent statements of Ms. Renee on the other. Ms. Renee might win the case at trial, but the likelihood of her doing so is negligible. She hasn't demonstrated a likelihood of success on the merits.

The court must also consider whether Ms. Renee will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the defendants will suffer if the injunction is granted. Ms. Renee seeks a transfer to a women's correctional facility to avoid sexual abuse by male correctional staff, alleging that staff at six separate men's correctional facilities has abused her. But male correctional officers also work at women's correctional facilities. Though the strip search policy might differ at a women's correctional facility, what Ms. Renee describes are not strip searches but are instead a department-wide pattern of egregious sexual misconduct unlikely to be deterred by a change in policy. The court doesn't intend to downplay any harm Ms. Renee has suffered, but it is unclear that a transfer to a women's correctional facility would give her any relief.

Turning to the irreparable harm the defendants would suffer if an injunction were issued and later found to have been in error, the court has limited authority to order injunctive relief in prisoner. <u>Westefer v. Neal</u>, 682 F.3d 679 (7th Cir. 2012). Specifically, "the remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right." <u>Id.</u> The starting point for a narrowly drawn remedy would be to require the Warden to conduct a proper investigation in response to Ms. Renee's complaints. The Warden has demonstrated his staff has conducted two reasonably thorough investigations in response to the only grievance received from Ms. Renee and that they would likely do the same in response to any

7

additional grievances. Without some indication that the prison staff is ignoring or mishandling Ms. Renee's complaints of sexual misconduct, the court can't conclude that Ms. Renee will suffer irreparable harm absent an order for injunctive relief.

For these reasons, the court DENIES the motion for a preliminary injunction (ECF 46).

SO ORDERED on March 20, 2019

/s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT